UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

TIMOTHY L. S.[1]

                             Plaintiff,

        v.

ANDREW SAUL, Commissioner, Social
Security Administration,

                             Defendant.

Case No. 6:19-cv-988-AC

OPINION AND ORDER

_____

ACOSTA, Magistrate Judge:

*Introduction*

      Plaintiff Timothy L. S. ("Plaintiff") filed this action under section 205(g) of the Social

Security Act (the "Act") as amended, 42 U.S.C. § 405(g), to review the final decision of the

Commissioner of Social Security (the "Commissioner") who denied him social security disability

insurance benefits ("Benefits").  The court finds the decision is adequately supported by the record

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of
the non-governmental party in this case.

both with regard to the discounting of Plaintiff's subjective testimony on his pain and resulting limitations, and the residual functional capacity included in the hypothetical posed to the vocational expert. Accordingly, the Commissioner's final decision is affirmed.[2]

*Procedural Background*

On or about February 21, 2013, Plaintiff filed an application for Benefits alleging an onset date of July 12, 2012. The application was denied initially, on reconsideration, and by Administrative Law Judge John Michaelsen after hearing testimony on November 17, 2014 (the "2014 Hearing"). The Appeals Council denied review and Judge Michaelsen's decision became the final decision of the Commissioner. Plaintiff sought review of the Commissioner's decision in this court, arguing Judge Michaelsen erred in his evaluation of Plaintiff's symptom allegations, mental health impairments, and residual functional capacity, as well as lay witness testimony and the medical opinion provided by John H. Ellison, M.D. ("Dr. Ellison").

In a Findings and Recommendation dated October 27, 2017 ("First F&R"), Magistrate Judge John Jelderks found Judge Michaelsen properly discredited Plaintiff's testimony as inconsistent with a function report completed by his mother (the "Report") but rejected the ALJ's reliance on inconsistencies in Plaintiff's testimony regarding his onset date, Plaintiff's ability to continue to work for three years after reporting significant pain, Plaintiff's decision to stop taking narcotic medications, and inconsistent treatment records. *Studebaker v. Berryhill*, Civil No.: 6:16-CV-01023-JE, Findings and Recommendation dated October 27, 2017, ECF No. 17 ("*Studebaker I*"), at 9-11.[3] Similarly, Judge Jelderks affirmed Judge Michaelsen's decision to afford "little

---

[2] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

[3] The Findings and Recommendation was adopted by Judge Michael W. Mosman on January 24, 2018. The Findings and Recommendation is in the administrative record at pages 644-664, and

PAGE 2 - OPINION AND ORDER

weight" to the limitations identified by Plaintiff's mother as inconsistent with her statements in the Report. *Id*. at 12-13. He also rejected Plaintiff's assertion Judge Michaelsen "created ambiguity" in his consideration of Dr. Ellison's opinion finding "the ALJ reasonably considered and weighed the medical opinion evidence." *Id*. at 16. Judge Jelderks agreed with Judge Michaelsen's conclusion that Plaintiff's anxiety and depression were not "severe" impairments at step two of the sequential evaluation process but found he erred in failing to consider Plaintiff's need for, and use of, a cane because it was not prescribed by an acceptable medical source. *Id*. at 16-19. Judge Jelderks then remanded the matter for further proceedings to evaluate Plaintiff's need for a cane, any erroneously rejected testimony of Plaintiff, and whether any job exists in the economy that Plaintiff could perform with any modified residual functional capacity. *Id*. at 20-21.

On remand, the Appeals Council directed the administrative law judge to consider the necessity of Plaintiff's use of a cane, obtain supplemental evidence from a vocational expert, and provide Plaintiff the option of another hearing. After considering additional medical records and holding a second hearing on March 14, 2019 ("2019 Hearing"), Administrative Law Judge Katherine Weatherly also found Plaintiff not disabled. The Appeals Council denied review and Judge Weatherly's decision became the final decision of the Commissioner.

*Factual Background*

Plaintiff currently is fifty-four years old and was fifty-two years old on the date he was last insured. He graduated from high school and attended one year of college. His past relevant work experience includes water treatment operator. Plaintiff has not been involved in a successful work attempt since July 12, 2012. He alleges disability because of degenerative disc disease, chronic

---

the Order adopting the Findings Recommendation is in the administrative record at pages 642-643.

pain, fatigue, limited physical mobility, chronic loss of sensation in his arms and right leg between his knee and shin, balance issues, vertigo, and noise sensitivity. Plaintiff last met the insured status requirements entitling him to Benefits on March 31, 2018.

I. Testimony

A. *Plaintiff*

At the 2014 Hearing, Plaintiff testified he was forced to quit his job as a utility worker in July 2012 due to excessive absences caused by his daily, extreme pain and resulting physical incapacitation. (Tr. of Social Security Administrative R., ECF No. 13 ("Admin. R."), at 53, 54.) He did not look for any alternative employment and considered himself unable to perform any job due to longstanding problems in his cervical and lumbar spine, and recent issues, such as tremors in both hands, numbness in his fingers, balance issues, and a "drop foot." (Admin. R. at 54-55.)

Plaintiff treated his pain with medication, which did not completely eliminate the pain, and participated in physical therapy and acupuncture, which did not provide any relief. (Admin. R. at 56.) Without medication, Plaintiff was unable to do anything, suffered from excruciating headaches and blurred vision, and could not walk upright. (Admin. R. at 59-60.) With medication, "the pain dissipate[d] quite a bit," and he was able to "go to the bathroom by [him]self" and "go to the refrigerator to get food that [his] wife ha[d] made." (Admin. R. at 60.) Standing and sitting for more than a couple minutes, or being in a vehicle for ten minutes or more, exacerbated his pain and forced him to lay down. (Admin. R. at 60.) He was unable to lift anything, including something as light as a gallon of milk, due to resulting pain in his neck and low back. (Admin. R. at 62.)

Plaintiff lived with his wife, who worked outside of the home and performed all of the household chores, such as laundry, meal preparation, cleaning, and shopping. (Admin. R. at 56-

PAGE 4 - OPINION AND ORDER

57.)  He did not drive because of his constant use of pain medication.  (Admin. R. at 57.)  He spent his day reclining on the couch watching television and listing to audiobooks.  (Admin. R. at 57-58.)  He used a cane which he represented was prescribed by a physician a month prior to the 2014 Hearing.  (Admin. R. at 55.)

Plaintiff testified at the 2019 Hearing he still lived with his wife, who remained solely responsible for cooking and household chores.  (Admin. R. at 618, 627-28.)  He was unable to do anything around the house because he dropped things, tripped and fell, and was unable to stand for any period of time.  (Admin. R. at 628.)  He spends his days reading and watched television or listened to the radio when his eyes were bothering him.  (Admin. R. at 628.)  He did not sleep more than two to three hours a t night and napped for one to four hours daily.  (Admin. R. at 629.)  He was incontinent four to five times a month.  (Admin. R. at 630.)  He drove about five times a month and had difficulties using the pedals with his right leg, on which he wore a "full brace" that covered his leg from below the knee to his foot.  (Admin. R. at 618-19.)

Plaintiff testified he quit his job with the water treatment plant in July 2012 because he was having difficulty lifting things and walking, standing, and sitting for long periods of time.  (Admin. R. at 620-21.)  He indicated the job required the ability to lift up to one-hundred pounds and management was not "fond" of employees on pain medication.  (Admin. R. at 621.)  He did not apply for any other jobs, including "sit-down type of jobs" due to pain in his lower and upper back, pelvis, hands, and feet when he sat for extended periods of time.  (Admin. R. at 621-22.)

He testified he could stand for five minutes, sit for up to ten minutes depending on the chair, and spent seventy-five to ninety per cent of his day in his recliner with his legs elevated.  (Admin. R. at 622-23.)  He is not able to lift more than a glass of water, has difficulty writing, and

drops things because of pain and numbness in his arms, hands, and fingers.  (Admin. R. at 625.)
He suffers from blurred vision due to neck pain daily for several hours.  (Admin. R. at 626.)

### B.  Annetta Goldman

Annetta Goldman, Plaintiff's mother ("Goldman"), completed the Report in May 2013.
(Admin. R. at 177-184.)  Goldman reported on a normal day, Plaintiff showered, occasionally
prepared a quick and easy meal for himself and his daughter, watched television, read, and napped.
(Admin. R. at 178-79.)  Plaintiff had no difficulty maintaining his personal care with the exception
of clipping his toenails, which caused pain when he bent.  (Admin. R. at 178-79.)  He performed
some household chores, such as "some cleaning", "limited vacuuming," and loading the
dishwasher, but was unable to perform any yard work because it increased his pain.  (Admin. R.
at 179.)  Goldman reported Plaintiff went outside and communicated with family and friends daily,
primarily by phone but sometimes at his house, and drove to the grocery store every other week
for thirty-minute shopping trips.  (Admin. R. at 181.)  She believed Plaintiff was unable to lift
more than two-to-three pounds, could walk one-hundred yards before needing to rest for ten
minutes, and sit for fifteen minutes at a time.  (Admin. R. at 182.)  Squatting, bending, standing,
and reaching resulted in increased back pain, climbing stairs stressed Plaintiff's back and legs, and
it was difficult for Plaintiff to return to a standing position after kneeling.  (Admin. R. at 182.)
Plaintiff used a cane and brace prescribed by a physician, wore glasses, and experienced some
decrease in his ability to concentrate after taking pain medication.  (Admin. R. at 182-83.)

## II.  Medical Evidence

### A.  Medical Providers

Plaintiff began treatment with L. Susan Anderson, ND, LAc ("Anderson") in July 2012 for
pain management related to his disc degeneration.  (Admin. R. at 314.)  From July 2012 to January

29, 2019, Anderson prescribed varying doses of methadone, oxycodone, oxycontin, and hydromorphone alternatively, as well as a "Very Low Dose Naltrexone," fentanyl patch, topical pain relievers, herbal formulas, and acupuncture. (Admin. R. at 314-17, 887, 890-939.)

Anderson completed a functional assessment on November 13, 2014, indicating Plaintiff was able to sit less than one hour and stand or walk less than two hours in an eight-hour workday; needed to alternate between sitting and reclining to alleviate pain, and take mini-breaks every hour; and would be absent from work more than two days a month. (Admin. R. at 318.) He retained the ability to push and pull frequently but could rarely reach, handle, finger, and feel due to numbness from his neck down to his fingers, and limited dexterity and sensation. (Admin. R. at 319-20.) Anderson opined Plaintiff could not lift or carry anything, climb, balance, kneel, crouch, crawl, or stoop due lack of patellar reflexes in his legs, numbness in his lower right leg, balance issues, and fatigue. (Admin. R. at 319.) Tension headaches, blurred vision from neck pain, ringing ears, and fatigue limited Plaintiff's ability to see, hear, and speak. (Admin. R. at 320.) He should have limited exposure to temperature extremes, noise, dust, vibrations, humidity, hazards, fumes, odors, chemicals, and gases to avoid increased pain and fatigue. (Admin. R. at 320.) Finally, his fatigue and pain resulted in decreased functioning in attention, concentration, staying on task, attendance, and tardiness, and detrimentally affected Plaintiff's ability to work at a constant pace without breaks, respond to routine, everyday changes in the workplace, and perform activities within a schedule. (Admin. R. at 321.) She reported Plaintiff was unable to grocery shop, run errands, cook for himself, or be out of bed for long; needed assistance for normal activities, such as selfcare, grooming, hygiene, showering, and feeding; and experienced tremors in his hands when fatigued. (Admin. R. at 318, 321.)

A letter of unknown date or origin, but which Anderson apparently authored in early 2015, reported Plaintiff's pain level increased dramatically after he traveled on an airplane, as well as when he took sixty-mile car trip, requiring two stops to move around, and ate at a restaurant. (Admin. R. at 888.)  Plaintiff stated "travel is not worth it to him anymore."  (Admin. R. at 888.) Plaintiff's ability to complete household tasks declined as he was not able to feel with his fingers and thumbs when loading and unloading the dishwasher or performing other tasks.  (Admin. R. at 888.)  The author indicated they were adjusting his medication in an attempt to find a combination that would allow Plaintiff to "take care of all of his living tasks unassisted."  (Admin. R. at 889.) She then opined:

> His pain does not go away, but only reduce it at times with the medications.  Any potential employer would hesitate to hire a person on those medications.  Without the pain medications, his functioning levels further decline, and increased depression puts him at high risk.

> \* \* \*

> At this time I do not see any potential for Mr. Studebaker to re-enter the work force. He can't sit for long periods.  He certainly can't stand for long periods.  His use of his hands is limited.  He falls frequently.  And he needs to rest or nap during large parts of the day.  And unmedicated, the pain makes it hard for him to stay on task.

(Admin. R. at 889.)

On February 22, 2019, Anderson completed a questionnaire at the request of Plaintiff's counsel stating that injuries and damage to Plaintiff's cervical and lumbar spine, supported by MRIs of these areas, "caused degenerative disk conditions that include pressure on his nerves and neuropathy in hi[s] arms, hands, legs, and feet; reduced mobility; reduced strength; and severe pain in his cervical and lumbar spine."  (Admin. R. at 959.)  She opined these medical conditions limited his ability to perform for the following reasons:

PAGE 8 - OPINION AND ORDER

> His ability to walk is not reliable. Due to the nerve damage in his lumbar area, he has frequent falls, both from a right foot drop that trips him and his right leg does not always support him. With the neuropathy in his hands he has trouble picking up small items. Writing is difficult. Computer use and other repetitive motion exacerbates the neuropathy. He is unable to stand or sit for more than short periods of time. Lifting, carrying, bending, twisting, pushing, or pulling increases his overall pain levels and can trigger shooting pains.

(Admin. R. at 959.)

Anderson completed a second functional assessment the same date which again documented that Plaintiff was able to sit less than one hour and stand or walk less than two hours in an eight-hour workday; needed to alternate between sitting and reclining to alleviate pain, and take mini-breaks at least hourly; and would be absent from work more than two days a month. (Admin. R. at 961.) He could no longer push or pull, and could still rarely reach, handle, finger, and feel because reaching overhead triggered cervical pan and neuropathy left him with limited dexterity and sensation in his hands. (Admin. R. at 962-63.) She again opined Plaintiff could not lift or carry anything, because that activity increased pain in his central spine and sent shooting pains down his arms; that he could not climb, balance, kneel, crouch, crawl, or stoop due to numbness in his lower right leg; and that he suffered from foot drop of his right foot, balance issues, and fatigue. (Admin. R. at 963.) Cervical spine degeneration, blurred vision from neck pain, ringing ears, and fatigue also continued to limit Plaintiff's ability to see, hear, and speak. (Admin. R. at 963.) He still required limited exposure to temperature extremes, noise, dust, vibrations, humidity, hazards, fumes, odors, chemicals, and gases to avoid increased pain and fatigue. (Admin. R. at 964.) Finally, his fatigue and pain continued to cause decreased functioning in attention, concentration, staying on task, attendance, and tardiness, and detrimentally affected Plaintiff's ability to work at a constant pace without breaks, respond to routine, everyday changes in the workplace, and perform activities within a schedule. (Admin. R. at 321.) Anderson

PAGE 9 - OPINION AND ORDER

identified "constant pain even with medication, his mobility issues, his need for assistance with some normal activities, his need to change positions frequently, his tremors with fatigue" as other functional limitations that would result in at least occasional decreased functioning. (Admin. R. at 964.) She represented these functional limitations were "reflective of Mr. Studebaker's expected limitations on or before December 31, 2017." (Admin. R. at 940.)

### B. Examining Physicians

Dr. Ellison, a neurologist, reviewed medical records, examined Plaintiff, and diagnosed him with "chronic pain and limited range of motion in low back, neck, and both hips" on June 11, 2013. (Admin. R. at 228, 230.) Dr. Ellison reported Plaintiff exhibited right sacroiliac tenderness; reduced range of motion in flexion, extension, and lateral flexion; and positive straight leg raise in both legs, with the right leg a little more painful. (Admin. R. at 229.) Plaintiff was unable to squat due to pain in his right hip, and abduction and adduction of his hips was limited by pain. (Admin. R. at 229.) He leaned lightly on a cane in his right hand while walking, was not able to walk on heels or toes due to back pain, and was a little unsteady in his tandem walk. (Admin. R. at 229.)

Plaintiff's range of motion in his other joints, his motor strength and muscle tone, and his sensory exams all tested normal. (Admin. R. at 229.) He was able to reach, grip, release, and manipulate large and small objects, perform rapid rhythmic alternating, finger-to-nose, and heel-to-knee movements, and he exhibited no tremors or spasticity. (Admin. R. at 229.)

### C. Reviewing Physicians

Linda L. Jenson, M.D. ("Dr. Jenson"), reviewed Plaintiff's medical records and on June 25, 2013, diagnosed Plaintiff with discogenic and degenerative disorders of the back but did not consider Plaintiff disabled. (Admin. R. at 80.) Dr. Jenson believed Plaintiff retained the ability to push and/or pull; occasionally lift or carry twenty pounds, climb ramps, stairs, ladders, ropes, and scaffolds,

PAGE 10 - OPINION AND ORDER

and stoop, kneel, crouch or crawl; frequently lift or carry ten pounds and balance; stand and/or walk and sit about six hours in an eight-hour workday; was limited in his ability to reach overhead; and should avoid concentrated exposure to hazards such as machinery and heights.  (Admin. R. at 82-83.)  Accordingly, Dr. Jenson found Plaintiff able to engage in light work.  (Admin. R. at 84-85.)  Martin A. Kehrli, M.D. ("Dr. Kehrli") another reviewing physician, affirmed Dr. Jenson's diagnosis and findings on September 18, 2013.  (Admin. R. at 88, 95-100.)

     *D.  Images and Testing*

X-rays of Plaintiff's lumbar and cervical spine taken in May 2013 revealed "[m]ild L4-5 and mild to moderate L5-S1 degenerative disk disease,"  "[m]oderate C6-7 degenerative disk disease," "[m]ild C5-6 degenerative disk disease," and "[r]eversal of the normal cervical lordosis centered at the C5-6 level which can be secondary to muscle spasm and/or the above described degenerative changes."  (Admin. R. at 231-32.)  A retrolisthesis of C6 on C7, previously revealed in a cervical spine x-ray dated October 4, 2010, was still present.  (Admin. R. at 232.)

Subsequent x-rays of Plaintiff's lumbar spine taken in early 2016 "demonstrate normal alignment.  There is no evidence for fractures or bone abnormalities.  Degenerative disc disease and fact arthropathy are present at the levels of L4-L5 and L5-S1 and have increased since 2009."  (Admin. R. at 783.)  Results from an x-rays taken in April 2018 indicated "moderate degenerative disc disease at L4-L5 and L5-S1 appears similar to the prior studies."  (Admin. R. at 789.)

An MRI of the lumbar spine in March 2016 showed early degenerative changes at L2-L3, L3-L4, and L5-S1 with mild arthropathy and hypertrophy in areas, and chronic degenerative changes at L4-L5.  (Admin. R. at 785.)  An MRI of Plaintiff's cervical spine taken in December 2016, revealed disc bulges at C5-C6 and C6-C7, kyphotic angulation, posterior displacement and

some flattening of the cervical cord, decreased vertical height, and moderate bilateral foraminal stenosis.  (Admin. R. at 788.)

III.  Vocational Evidence

Jaye Stutz, MA, CRC, a certified rehabilitation counselor ("Stutz"), participated in the 2019 Hearing and testified as a vocational expert.  (Admin. R. at 631, 746.)  He characterized Plaintiff's last work experience as a water treatment operator with work demands in the medium or heavy range.  (Admin. R. at 631-32.)  Judge Weatherly asked Stutz if a hypothetical individual of the claimant's age and education limited to no more than light work;[4] frequent balancing; occasional stooping, crouching, crawling, climbing, kneeling, and overhead reaching with both arms; who needed to avoid workplace hazards such as concentrated exposure to unprotected heights and moving machinery; and required the use of a cane for ambulation could perform Plaintiff's past relevant work.  (Admin. R. at 632.)  Stutz testified such an individual would be unable to perform Plaintiff's past relevant work but could perform the jobs of storage rental facility clerk, electrical accessories assembler, or bench assembler, all of which were classified as light work.  (Admin. R. at 633.)  When the Judge Weatherly added the additional limitations of an inability to sit, stand, and walk a total of eight hours in an eight-hour workday, and that the

---

[4] "Light Work" is defined in 20 C.F.R. 404.1567(b) as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

individual be allowed to take breaks or otherwise be off-task at least ten percent of a workday or miss two or more workdays a month, Stutz opined there was no work available for such an individual. (Admin. R. at 634.) Responding to Plaintiff's representative's question, Stutz testified the individual described in the first hypothetical with the additional limitations of less than occasional handling, fingering, or feeling would not able to perform the tasks required of a storage rental facility clerk, electrical accessories assembler, or bench assembler. (Admin. R. at 635.)

## IV. ALJ Decision

Judge Weatherly found Plaintiff suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spine, obesity, and chronic pain syndrome, and that Plaintiff had not engaged in substantial gainful activity from July 21, 2012, through March 31, 2018. (Admin. R. at 595.) While conceding Plaintiff's impairments limited his ability to perform basic work activities, Judge Weatherly found such impairments did not meet or equal the severity of any listed impairment. (Admin. R. at 595, 597.) As a result of his impairments, Judge Weatherly considered Plaintiff capable of performing no more than light work but with these additional limitations:

> He was limited to no more than frequent balancing and no more than occasional stooping, kneeling, crouching, crawling, and climbing. He was limited to no more than occasional overhead reaching bilaterally. He needed to avoid concentrated exposure to workplace hazards, such as unprotected heights and moving machinery. He required the use of a cane for ambulation.

(Admin. R. at 597.) In light of these limitations, Judge Weatherly deemed Plaintiff unable to perform his past relevant work of water treatment operator. (Admin. R. at 605.) Judge Weatherly acknowledged the vocational expert's testimony that Plaintiff could perform the jobs of storage facility rental clerk, electrical accessories assembler, and bench assembler. (Admin. R. at 606.) Based on Plaintiff's age, education, work experience, identified limitations, and Stutz's testimony,

Judge Weatherly found Plaintiff "has not been under a disability within the meaning of the [Act] from May 23, 2013, through the date of this decision." (Admin. R. at 24, 36.)

Judge Weatherly gave little weight to the opinions Anderson offered, finding them inconsistent with her treatment notes and other medical records (including records revealing that Plaintiff declined several treatment modalities despite his reports of excruciating pain), and with Plaintiff's activities of daily living; that her opinions rested primarily on Plaintiff's subjective reports; and that they lacked support in objective findings on impairments such as blurred vision, headaches, ringing in the ears, decreased dexterity, decreased cognition, or diminished concentration. (Admin. R. at 603-04.) Judge Weatherly similarly gave little weight to the severe limitations Goldman described, including Plaintiff's inability to lift more than three pounds, walk more than one-hundred yards, or sit more than fifteen minutes, finding them inconsistent with her reports that Plaintiff "maintained his hygiene, prepared meals, performed chores, drove, and shopped." (Admin. R. at 599.) Judge Weatherly gave great weight, however, to the opinions of Dr. Jenson and Dr. Kehrli, and considered Dr. Ellison's objective findings Dr. Ellison. (Admin. R. at 604.)

Judge Weatherly found Plaintiff's "medically determinable impairments could reasonably be expected to cause some [of] the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Admin. R. at 599-600.) Judge Weatherly discussed in great detail Plaintiff's testimony regarding his limitations offered to both her and Judge Michaelsen and her justifications for discounting such testimony, describing the lack of objective medical evidence supporting the limitations, inconsistent use of effective medication and treatment, and activities of daily living,

PAGE 14 - OPINION AND ORDER

as well as testimony inconsistent with Plaintiff's reported limitations. Because of the remoteness of Plaintiff's date last insured, she believed "his self-reports to treating sources memorialized in the treatment notes are the most accurate portrayal of functioning." (Admin. R. at 599.)

### A. Lack of Objective Medical Evidence

Judge Weatherly considered Plaintiff's complaints in light of treatment records and objective testing. She noted that imaging studies confirmed Plaintiff's history of intermittent back and neck pain, and reports of worsening of symptoms, and revealed increasing lumbar and cervical degenerative changes, acknowleged Plaintiff's chronic pain syndrome diagnosis. (Admin. R. at 600-01.) But after considering the record as a whole, she concluded "the medical evidence of record does not contain objective findings that would reasonably support the degree of limitation the claimant alleges." (Admin. R. at 602.)

Judge Weatherly acknowledged that "the objective findings of record during the period at issue show some instance of grip weakness, lower extremity, and decreased sensation," but she found "those objective findings do not support the degree and severity of limitations alleged by the claimant." (Admin. R. at 599.) Judge Weatherly then compared Plaintiff's subjective complaints against the medical providers' objective findings and comments from testing results.

Specifically, she identified treatment notes from an April 2012 trip to the emergency room for complaints of low back pain that revealed Plaintiff reported lumbar tenderness, but he performed substantially normally on strength tests, resisted additional examination of his back, and, according to the medical provider, gave "suboptimal" effort on resistive manual motor testing. (Admin. R. at 600.) A month later, Plaintiff rated his neck, low-back, and right-leg pain at twelve to fifteen on a ten-point scale, reported severe back pain with minimal straight-leg-raise testing, and appeared unable to stand upright due to pain. (Admin. R. at 600.) But treatment notes revealed

PAGE 15 - OPINION AND ORDER

he exhibited some lumbar tenderness and no cervical spine tenderness, that he moved his neck freely, and that he had a functional range of motion with walking and mobility despite an antalgic gait. (Admin. R. at 600.)  In July 2013, Plaintiff reported an exacerbation of his back pain and had palpable lumbar muscle spasm. (Admin. R. at 600-01.)  Although he reported pain in all directions, Plaintiff's range of motion and strength remained normal. (Admin. R. at 601.)  Later that year, Plaintiff complained of ongoing neck and back pain with radiating pain in his arms and legs, frequent leg numbness, loss of hand strength, and decreased sensation in his upper extremities. (Admin. R. at 601.)  Testing revealed essentially normal strength with a slight decrease on the right side and in his hands, and some decreased sensation on his right leg, but no evidence of decreased sensation in his upper extremities. (Admin. R. at 600.)  Furthermore, Plaintiff exhibited a "fairly normal gait" with a 'little shortened" stride. (Admin. R. at 601.)

In 2014, a physical examination revealed Plaintiff "had normal strength other than 4/5 grip strength, an antalgic gait, stiff movements, full range of motion with subjective reports of pain, and absent sharp sensation in the right leg." (Admin. R. at 601.)  Two years later, Plaintiff reported increased numbness, and loss of mobility and flexibility in his fingers and continuing foot drop that resulted in falls. (Admin. R. at 601.)  The treatment notes indicated Plaintiff held himself stiffly, exhibited an altered gait, and had poor range of motion in his hands. (Admin. R. at 601.)  In March 2017, Plaintiff again reported his foot drop caused him to trip frequently; the medical provider reported "vague objective findings" of an altered gait and poor range of finger movement, but failed to provide specific findings on the degree of such limitations or on Plaintiff's retained strength or sensation. (Admin. R. at 602.)  In March 2018, Plaintiff complained of right leg numbness and the absence of right leg reflex, but the examination revealed no abnormalities. (Admin. R. at 602.)  One month later, Plaintiff rated his pain level at eight to an orthopedist

PAGE 16 - OPINION AND ORDER

evaluating his history of right-leg pain, foot drop, and numbness.  (Admin. R. at 602.)  During the examination, Plaintiff used a cane and reported he could not perform a heel or toe walk.  (Admin. R. at 602.)  The medical provider observed limited lumbar range of motion but no lumbar tenderness, described Plaintiff's MRI results as "mild at best," and did not believe Plaintiff's symptoms were lumbar related.  (Admin. R. at 602.)

Referring to Plaintiff's complaints of tremors during his 2014 Hearing testimony, Judge Weatherly found no objective record evidence of tremors on examination.  (Admin. R. at 598.)  Judge Weatherly similarly discounted Plaintiff's complaints of daily blurred vision due to neck pain, noting Plaintiff complained of blurred vision only once to a treatment provider in April 2016, and concluding such complaint was "not supported by the subjective or objective findings during the period at issue."  (Admin. R. at 598-99.)  Finally, while Plaintiff testified he took daily naps for one-to-four hours, Judge Weatherly concluded "the medical evidence of record during the period at issue failed to establish that doing so was medically necessary."  (Admin. R. at 599.)

### B.  Inconsistent Medical Treatment

Judge Weatherly believed Plaintiff's "course of medical treatment and use of medications are not consistent with his allegations regarding the intensity, persistency, and limiting effects of his symptoms and conditions."  (Admin. R. at 602.)  She explained:

> The evidence of record shows that his back pain generally improved with medication, and his neck pain was generally effectively managed with medication and acupuncture.  Moreover, there were long periods during which his medications were refilled without change, and there is no evidence of significant medication side effects.  Additionally, the claimant was never hospitalized for any significant period, and his impairments did not receive or require more aggressive forms of treatment, such as surgery.  This level of treatment suggests the claimant's impairments did not result in significant limitation that precluded him from engaging in basic work activity.

(Admin. R. at 602-03.)

PAGE 17 - OPINION AND ORDER

Judge Weatherly cited and summarized treatment records in support of her conclusion. For example, she cited records in which Plaintiff reported his medication provided some, if not complete, relief. In April 2012, Plaintiff reported complete pain with medication relief upon discharge from the emergency room. (Admin. R. at 600.) After complaining of increased back pain in July 2013, Plaintiff represented his "pain had historically resolved with two to three weeks of Percocet," and Judge Weatherly summarized his 2014 medical records to "show that his symptoms were generally managed with 'occasional' Advil (which he indicated he did not use on a daily bases) and Oxycodone as needed." (Admin. R. at 601.) In November 2014, Plaintiff admitted medication helped but did not completely eliminate his pain, and he reported pain levels of five or six with medication and relief of neck pain with acupuncture. (Admin. R. at 598, 600.) Plaintiff's medication and doses remained relatively the same and increased in frequency based on his subjective reports of pain. (Admin. R. at 600.)

Despite evidence Plaintiff's medications alleviated his pain to a great degree, Plaintiff told his primary treatment provider he wanted to stop taking medication in 2012. (Admin. R. at 600.) He subsequently declined physical therapy and surgery referrals in 2014, choosing medication to manage his pain. (Admin. R. at 601.) He reported later that year that even with the "small breaks and reductions in pain" he achieved from medication, he was unable to perform activities of daily living without assistance, but he denied the offer of a pain pump. (Admin. R. at 601.) Plaintiff also admitted he had failed to use a referral for orthotic care in March 2017 at the time requested another such referral in March 2018, after a one-year gap in medical care. (Admin. R. at 602.)

### C. Activities of Daily Living/Inconsistent Testimony

Judge Weatherly found Plaintiff's description of the limitations resulting from his impairments were inconsistent with other testimony in the record, including descriptions of

Plaintiff's activities of daily living, and, therefore, not necessarily credible.  She discounted Plaintiff's representations offered at the 2014 Hearing that he spent most of day his reclining and he could not sit or stand for more than ten minutes without changing position based on testimony he traveled long distances on occasion and his own report he tried to stay active by, for example, using an elliptical trainer and going for walks.  (Admin. R. at 598, 600.)  Similarly, she noted: "Although the claimant alleged that he did not help with meals or housework due to pain, the evidence of record shows that he helped with at least some of the laundry, prepared meals, independently maintained his hygiene, loaded the dishwasher, and performed limited vacuuming." (Admin. R. at 598.)  She concluded:  "Such inconsistent statements undermine the claimant's allegations regarding the intensity, persistency, and limiting effects of his symptoms and condition." (Admin. R. at 598.)

Judge Weatherly also found Plaintiff's description of his physical limitations at the 2019 Hearing inconsistent with other testimony and evidence in the record.  (Admin. R. at 599.)  Plaintiff testified he reclined seventy-five per cent of the day, could sit only for ten minutes before needing stand for thirty to sixty seconds, could not stand for longer than five minutes before needing to sit, and could not comfortably lift more than a glass of water due to grip weakness and numbness. (Admin. R. at 598-99.)  Judge Weatherly found Plaintiff's description of his lifting, sitting, and standing limitations inconsistent with evidence he "drove, traveled, read, prepared meals, performed some chores, and tried to stay active."  (Admin. R. at 599.)  She considered Plaintiff's reports "he did 'not really' help with chores or meals due to dropping things, tripping and falling, and difficulty standing" belied by evidence Plaintiff "prepared simple meals and helped with the dishes and laundry."  (Admin. R. at 599.)  Judge Weatherly also specifically noted that while

Plaintiff represented at the 2019 Hearing he limited his driving due to numbness in his right leg, he continued to drive five times a month.  (Admin. R. at 598.)

Judge Weatherly characterized Plaintiff's complaints of blurred vision in 2016 as inconsistent with his reports he spent most of his time reading or, if his vision was bothering him, watching television or listening to the radio, specifically noting "watching television would also require use of his vision."  (Admin. R. at 599.)  Finally, Judge Weatherly noted Plaintiff reported in September 2018 he "felt he had reached a point where he may begin to lose normal ADL functionality," which she believed implied Plaintiff "had maintained 'normal ADL functionality' despite his pain and other symptoms."  (Admin. R. at 602.)

Judge Weatherly specifically found testimony on Plaintiff's activities of daily living was inconsistent with his description of the extent of his limitations.  Judge Weatherly explained:

> Despite the claimant's allegations that he was disabled and unable to work, he reported that he was trying to stay active, and the records show[] that he walked, used the elliptical, did yoga, traveled, and went boating. . . .  He also drove, read, and used the computer. . . .  While such activities of daily living do not dispute the existence of the claimant's alleged medical conditions and symptoms, it does suggest the intensity, persistency, and severity of his symptoms and resulting limitations (including his limitations on sitting, walking, and manipulative activities) may not be accurately reported.

(Admin. R. at 603.)

## Standard of Review

The Act provides for payment of Benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1) (2019).  The burden of proof to establish a disability rests upon the claimant.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), *cert. denied*, 519 U.S. 881 (1996).  To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to

PAGE 20 - OPINION AND ORDER

last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) (2019). An individual will be found disabled only if there are physical or mental impairments of such severity that the individual is unable not only to do previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2) (A) (2019).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for Benefits because he or she is disabled. 20 C.F.R. §§ 404.1520 (2019); *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, Benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, Benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of the specifically listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant has performed in the past. If the claimant is able to perform work which he or she has performed in the past, a finding of "not disabled" is made and Benefits are denied. 20 C.F.R. §§ 404.1520(e).

PAGE 21 - OPINION AND ORDER

If the claimant is unable to do work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy considering his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir. 1995) (DIB). The claimant is entitled to Benefits only if he or she is not able to perform other work. 20 C.F.R. §§ 404.1520(f).

When an individual seeks Benefits, judicial review of the Commissioner's decision is guided by the standards set forth in 42 U.S.C. §§ 405(g). The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g) (2019); *Batson* v. *Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Robbins* v. *Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki* v. *Shalala,* 999 F.2d 1411, 1413 (9th Cir. 1993).

The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins,* 466 F.3d at 882; *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Thus, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld, even where the evidence can support either affirming or reversing the ALJ's conclusion. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). In determining a claimant's residual functioning capacity, an ALJ must consider all relevant evidence in the record, including, *inter alia,* medical

records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883, *citing* SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (2019); *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996).   The reviewing court must consider the entire record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007).   However, a reviewing court may not affirm the Commissioner on a ground upon which the Commissioner did not rely.   *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *see also Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

*Discussion*

Plaintiff asserts Judge Weatherly erred by improperly discounting his testimony about his pain, fatigue, and resulting limitations and, as a result, failed to include all of his limitations in the residual functional capacity in the hypothetical posed to the vocational expert.   Plaintiff asks the court to enter an order reversing the Commissioner's final decision and remand for an immediate award of Benefits or, alternatively, for additional evidence and findings.   The Commissioner contends Judge Weatherly properly considered the evidence in accordance with the terms of the Act and related regulations, and the decision should be affirmed.

I.  Plaintiff's Testimony

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929 (2019).   The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be

expected to produce the symptoms alleged.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  At the second stage, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The ALJ must make sufficiently specific findings to permit the reviewing court to conclude the ALJ did not arbitrarily discredit the claimant's testimony.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).  Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony.  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.  "Credibility determinations are the province of the ALJ" and the court may not "second-guess" the ALJ's determination if the ALJ has made specific findings supported by substantial evidence in the record.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Judge Weatherly found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" and she did not identify any evidence to establish he was malingering.  (Admin. R. at 599.)  Consequently, the Judge Weatherly was required to offer clear and convincing reasons for rejecting Plaintiff's testimony with regard to the limitations supported by objective evidence.  To meet this standard, "[t]he ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – '[g]eneral findings are insufficient.'"  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005), (quoting *Reddick v, Chater*, 157 F.3d 715,722 (9th Cir. 1998)); *Bunnell v. Sullivan*, 947 F.2d 341,

346 (9th Cir. 1991) (*en banc.*)  ("[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain.")

Judge Weatherly expressly found "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (Admin. R. at 600).  The Ninth Circuit has expressly held that such a boilerplate statement, without more, "falls short of meeting the ALJ's responsibility to provide 'a discussion of the evidence' and 'the reason or reasons upon which' his adverse determination is based." *Treichler v. SSA*, 775 F.3d 1090, 1103 (9th Cir. 2014) (quoting 42 U.S.C. § 405(b)(1)); *Brown-Hunter*, 806 F.3d at 493 (ALJ's finding that limitations identified by claimant were less serious than alleged based on unspecified claimant testimony and a summary of medical evidence insufficient to meet clear and convincing standard).  Here, however, Judge Weatherly engaged in additional discussion of the evidence and reasons for discounting Plaintiff's testimony.

### A. Lack of Objective Findings

The Judge Weatherly found some of the limitations identified by Plaintiff were not supported by objective medical evidence.  These limitations include tremors, blurred vision, and Plaintiff's need to nap for up to four hours a day.

Plaintiff reported he experienced tremors beginning in 2013.  Judge Weatherly found this limitation was not supported by any objective medical evidence in the record.  Plaintiff points to two medical records which he claims provide objective evidence of tremors.  The first is a notation that Plaintiff showed decreased strength in his forearm muscles and fingers with some occasional "fasciculations."  As Plaintiff notes, a "fasciculation is a muscle contraction or twitching that is visible under the skin."  (Pl.'s Opening Brief, ECF No.  ("Brief"), at 10.)  However, a tremor is

PAGE 25 - OPINION AND ORDER

generally defined as a "a trembling or shaking usually from physical weakness, emotional stress, or disease."[5]  Evidence of twitching under the skin does not equate to trembling or shaking of a body part.  The second record references tremors in a summary of Plaintiff's subjective symptoms and is not an objective finding.  There is no objective medical evidence that Plaintiff's impairments caused tremors or that Plaintiff exhibited or suffered from tremors because of the identified impairments.  Judge Weatherly properly rejected Plaintiff's testimony he suffered from tremors.

Judge Weatherly similarly found Plaintiff's reports of daily blurred vision due to neck pain lasting several hours were unsupported by objective evidence.  Judge Weatherly also commented on the lack of repeated reports of blurred vision, identifying only an April 2016 report.  Plaintiff contends Judge Weatherly's rejection of the vision limitation was erroneous based on at least three other subjective reports of blurred vision.  Plaintiff accurately notes the record contains other reports of blurred vision but, again, such subjective reports are not relevant to Judge Weatherly's finding the limitation is not supported by objective evidence.  The court does not find, and Plaintiff failed to identify, any objective medical evidence supporting Plaintiff's claimed he suffered from daily vision issues as a result of his identified impairments.  Moreover, while Plaintiff claims to suffer from blurred vision daily, his report he spends most of his time reading and watching television when his eyes are bothering him belie his claim of lengthy periods of daily blurred vision.  Judge Weatherly properly rejected Plaintiff's subjective reports of blurred vision as not corroborated by objective medical evidence.

Finally, Judge Weatherly noted no evidence supported Plaintiff's need to nap up to four hours a day as "medically necessary."  Plaintiff argues his need to nap is the result of his inability

---

[5] MERRIAM-WEBSTER DICTIONARY,  https://www.merriam-webster.com/dictionary/tremor, (last visited on August 5, 2020).

PAGE 26 - OPINION AND ORDER

to sleep at night due to his pain and is not verifiable by objective testing. Judge Weatherly found Plaintiff suffered from the severe impairments of degenerative disk disease of the cervical and lumbar spine and chronic pain syndrome. These impairments, as well as Anderson's prescription of medication specifically to address Plaintiff's nighttime pain, support Plaintiff's claim of pain and a resulting inability to sleep through the night. Because Plaintiff has difficulty sleeping at night, it is reasonable that he compensates by sleeping during the day, but it just as that Plaintiff's extensive napping during the day is contributing to his difficulty sleeping through the night. Furthermore, Plaintiff's ability to sleep up to four hours a day implies Plaintiff should also be able to sleep at night while on increased pain medication.

The ALJ is responsible for determining credibility and where evidence exists to support the ALJ's finding, the court may not substitute its own judgment or second guess the ALJ. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") Consequently, the court finds Judge Weatherly properly discounted Plaintiff's testimony he needed to nap for up to four hours a day.

### B. Inconsistent Medical Evidence

Judge Weatherly discounted Plaintiff's testimony based, in part, on his course of medical treatment and reported successful use of medication. She noted Plaintiff's neck and back pain was "generally effectively managed with medication and acupuncture," his medications remained consistent for long periods, he was never hospitalized, and he did not receive or require surgery or other more aggressive forms of treatment. (Admin. R. at 602.) Consequently, Plaintiff's treatment records do not support Plaintiff's testimony regarding the severity of his limitations. Plaintiff

PAGE 27 - OPINION AND ORDER

argues the evidence establishes medication merely lessens the degree of his pain, but does not control" it; his medications have been adjusted regularly; acupuncture and physical therapy only occasionally alleviated his pain to some degree; and the lack of surgery or hospitalization is immaterial because they were never recommended.

An ALJ may rely on failure to pursue treatment commensurate with the stated level of impairment or pain to discount a claimant's credibility.  *See Fair v. Bowen,* 885 F.2d 597, 604 (9th Cir.1989) (concluding failure to seek treatment may inform an ALJ's credibility determination). Additionally, evidence of medical treatment successfully relieving symptoms can undermine a claim of disability. *Wellington v. Berryhill,* 878 F.3d 867, 876 (9th Cir. 2017) (citing 20 C.F.R. §§ 404.1520a(c)(1)).

The record reveals Plaintiff reported medications effectively relieved his pain to the extent he could "have some mobility and quality of life;" he used the prescribed medication when he needed it, which was not necessarily all the time; and limited his use of some medications for non-medical reasons, such as it being "[h]ard to take the plastic off the adhesive".  (Admin. R. at 236, 384, 897, 909.)  Plaintiff's reported improvement while on pain medication and his practice of not using pain medication consistently supports Judge Weatherly's conclusion medication managed his pain effectively.

Plaintiff's medication was adjusted occasionally, generally at Plaintiff's request, which also is evidence Plaintiff found relief with medication.  At least one doctor characterized Plaintiff's MRI findings as "mild at best," was not convinced his symptoms were lumbar related, and recommended against surgery, which arguably indicates Plaintiff's impairments and subsequent limitations were not as severe as he reported.  (Admin. R. at 779.)  Moreover, Judge Weatherly noted Plaintiff requested but then failed to follow through on a referral for orthotics, and eh

PAGE 28 - OPINION AND ORDER

declined the option of a pain pump on at least one occasion. Unexplained, or inadequately explained, failure to follow prescribed treatment, as well as failure to seek treatment, are acceptable reasons to question credibility. *Smolen,* 80 F.3d at 1284.

Judge Weatherly's consideration of Plaintiff's willingness to treat his alleged incessant, severe neck and back pain solely with medication despite the arguable success of at least one alternative treatment, and the suggestion of two or three more, as a factor in discounting his pain testimony is appropriate and is supported by the record. This is true despite evidence that Plaintiff claimed medication did not successfully eliminate his pain, because such evidence merely reveals a conflict in the evidence which is the ALJ's province to resolve.

### C. Daily Activities

Judge Weatherly also found Plaintiff and Goldman's description of Plaintiff's daily activities to be inconsistent with his testimony regarding his alleged functional limitations. An ALJ may use a claimant's daily activities to reject his subjective symptom testimony on either of two grounds: (1) if the reported activities contradict the claimant's other testimony; or (2) if the activities meet the threshold for transferable work skills. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina,* 674 F.3d at 1113 (citing *Turner v. Comm'r of Sec. Sec.,* 613 F.3d 1217, 1225 (9th Cir. 2010)). Judge Weatherly was justified in discrediting Plaintiff's subjective testimony as inconsistent with other testimony in the record.

Judge Weatherly specifically identified evidence Plaintiff drove, traveled, read, used a computer, prepared simple meals, helped with dishes and laundry, maintained his hygiene, used an elliptical, did yoga, walked, boated, and tried to stay active all as contradictory to his reported

PAGE 29 - OPINION AND ORDER

limitations. Plaintiff argues as equally applicable here Judge Jelderks's finding that Plaintiff's attempts at yoga, using an elliptical, and boating are not proper grounds to discount Plaintiff's testimony regarding his limitations. Judge Jelderks specifically rejected Judge Michaelsen's "finding that Plaintiff's boating, yoga and use of an elliptical trainer are clear and convincing reasons to discredit Plaintiff's subjective symptom testimony," because attempts of these activities resulted in increased pain and were discontinued. *Studebaker I*, at 11. "The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court on the same issue." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). Because this court is presented with virtually the same evidence that was before Judge Jelderks, the law-of-the-case doctrine applies here and requires the court to honor Judge Jelderks's decision. Even if the doctrine did not apply, however, the court agrees with Judge Jelderks's reasoning and conclusion, and finds Judge Weatherly erred in relying on Plaintiff's unsuccessful attempts at yoga, boating, and elliptical training to discount his testimony. Furthermore, Judge Weatherly's general statement that Plaintiff tried to stay active, without a description of the activities in which Plaintiff attempted and evidence such attempts were successful and ongoing, is substantially similar and also insufficient.

Plaintiff also notes Judge Weatherly cited a comment he made in September 2018: "He feels that he has reached a point where he may begin to lose normal ADL functionality." (Admin. R. at 602.) Judge Weatherly found this this comment meant Plaintiff believed he had not yet lost normal ADL functionality. (Admin. R. at 602.) This inference is not unreasonable and the court cannot reject it.

Finally, Plaintiff argues Judge Weatherly failed to make specific findings on the transferability of Plaintiff's daily activities to a work setting. Judge Weatherly's discounting of

PAGE 30 - OPINION AND ORDER

Plaintiff's limitation testimony is based on inconsistencies between evidence of Plaintiff's daily activities and such testimony, and do not require specific transferability findings. Rather, evidence of Plaintiff's fairly extensive travel, ability to drive regularly, preparation of simple meals, participation in household chores, maintenance of personal hygiene, reading, and use of the computer are sufficiently inconsistent with Plaintiff's reports he spent most of his day reclining, could not sit or stand for more than a few minutes, of inability to help with household chores due to pain, and suffered blurred vision daily for a few hours to provide adequate support for Judge Weatherly's finding.

The court finds proper Judge Weatherly's discounting of Plaintiff's testimony on the extent of his limitations based on inconsistencies with regard to all activities other than boating, the elliptical, and yoga. This finding is consistent with Judge Jelderks's conclusion that Goldman's description of Plaintiff's activities of daily living in the Report contradicted Plaintiff's testimony that he was unable to do any activities of daily living. *Studebaker I*, at 11.

D.  *Inconsistent Statements*

Judge Weatherly also discounted Plaintiff's description of his limitations based on inconsistent statements made by Plaintiff, many of which duplicate testimony on activities of daily living. An ALJ may consider a range of factors in assessing credibility, including prior inconsistent statements concerning symptoms, and other testimony by the claimant that appears less than candid. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007)).

The court already has found erroneous Judge Weatherly's reliance on Plaintiff's attempts at yoga, boating, elliptical training, and staying active. Plaintiff argues Judge Weatherly also improperly relied on Plaintiff's traveling and activity level to discount his symptom reports.

Plaintiff's assertion that his pain level increases tremendously with travel does not negate evidence Plaintiff, despite such pain, voluntarily drove and traveled on a fairly regular basis. The record reveals Plaintiff reported he had "no trouble driving" in June 2013, was worried about having to give up driving in late 2015 despite testifying he was no longer driving at the 2014 Hearing, and, while it hurt to drive his wife's car, that the seats in her mother's car worked better for him in 2017. (Admin. R. at 228, 897, 914.) Plaintiff reported traveling to Seattle for a week and having a good trip in 2015; traveling to San Diego to visit his sister-in-law, making several trips to Dallas to be with his daughter, and traveling to attend a funeral and "to settle things with step mother" in 2017; picking-up his wife at the airport and staying "in the Valley" for a couple days in 2018; and picking-up his wife from the airport again in early 2019. (Admin. R. at 895, 915, 917, 919, 925, 935.) Despite his reports of extreme pain while travelling, Plaintiff's continued travel supports a conclusion he retained the ability to do much more than recline all day and sit and stand for less than ten minutes or that he was not in as much pain as he reports. In either case, Judge Weatherly appropriately relied on Plaintiff's driving and travelling to discount his pain testimony.

### E. Conclusion

The court finds Judge Weatherly properly relied on the absence of objecting findings supporting Plaintiff's claims of tremors, blurred vision, and need to nap up to four hours a day to discount his claims on these point. Similarly, the court finds Judge Weatherly justifiably concluded that evidence of medical treatment, activities of daily living, and Plaintiff's statements were inconsistent with his reported symptoms and limitations, and properly discounted his alleged limitations on these grounds.

\ \ \ \ \

II.  Residual Functional Capacity

Plaintiff argues Judge Weatherly improperly assessed his residual functional capacity and thus erred at step five.  Plaintiff argues the ALJ "should have included more restrictive limitations in regard to Plaintiff's ability to manipulate, lift, and carry, and stand and walk for extended periods of time."  (Brief at 5.)

The "residual functional capacity is the most [a claimant] can still do despite [his] limitations," 20 C.F.R. § 404.1545(a)(1).  Judge Weatherly found Plaintiff capable of light work, which requires lifting of twenty pounds occasionally and ten pounds frequently, and a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

Prior to determining Plaintiff's residual functional capacity, Judge Weatherly properly discounted Plaintiff's testimony about his limited ability to walk and stand, his need to recline most of the day with frequent naps, and his tremors.  She rejected Anderson's testimony on his limitations, credited Dr. Ellison's objective findings, and adopted the limitations identified by reviewing physicians Dr. Jenson and Dr. Kehrli – findings Plaintiff has not challenged.

Dr. Ellison believed Plaintiff was "able to reach, grip, release and manipulate large and small objects."  The examining physicians opined he retained the ability to occasionally lift or carry twenty pounds and frequently lift or carry ten pounds, stand and/or walk and sit about six hours in an eight-hour workday, and perform light work.

Judge Weatherly's residual functional capacity finding and hypothetical included limitations for which there was support in the record and, consequently, were proper.  Because she posed a hypothetical question to the vocational expert that incorporated a proper residual

functional capacity assessment, the vocational expert's testimony is substantial evidence supporting Judge Weatherly's step five finding, and that finding is affirmed.

*Conclusion*

The Commissioner's findings on Plaintiff's disabilities, considering the record as a whole, are supported by substantial evidence. The decision of the Commissioner is affirmed.

DATED this 21st day of September, 2020.

JOHN V. ACOSTA
United States Magistrate Judge

PAGE 34 - OPINION AND ORDER